UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMISI JERMAINE CALLOWAY,

Plaintiff,

v.

D. NIEVES, et al.,

Defendants.

No.  2:19-cv-01792-KJM-CKD P

ORDER AND

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983.[1]  This case is proceeding on plaintiff's complaint alleging that defendants Nieves and Luang used excessive force against him and that defendants Mim, Aungst, and Abu were deliberately indifferent to his serious medical needs resulting from the use of force, all in violation of the Eighth Amendment.  Currently pending before the court are defendants' motion for summary judgment.  The motion has been fully briefed by the parties.  For the reasons explained below, the undersigned recommends granting the motion, in part, and denying it in part.

/////

/////

---

[1] Plaintiffs in forma pauperis status was revoked on January 21, 2021.  ECF Nos. 32, 36.  Plaintiff paid the remaining filing fees in order to proceed with this action on February 2, 2021.

1      **I.      Defendants' Motion for Summary Judgment**

2              Defendants first assert that plaintiff failed to exhaust his administrative remedies for the

3      excessive force claim against defendant Luang and his deliberate indifference claims against

4      defendants Mim, Abu, and Aungst.  ECF No. 95-1 at 22-25.  Next, defendant Nieves contends

5      that the excessive force claim against him is barred by Heck v. Humphrey, 512 U.S. 477 (1994),

6      since plaintiff was found guilty of a Rules Violation Report ("RVR") for battery on a peace

7      officer causing serious bodily injury resulting in the use of force based on the same incident.

8      ECF No. 95-1 at 25-29.  Defendant argues that Heck and its progeny prevent a state prisoner from

9      pursuing a § 1983 action that, if successful, would necessarily imply the invalidity of a

10     disciplinary conviction resulting in the loss of good time or credit.  Id.  Turning to the merits of

11     the claims, defendants assert that the undisputed material facts demonstrate that defendants Mim,

12     Abu, and Aungst were not deliberately indifferent to plaintiff's serious medical needs on

13     November 19, 2015.  ECF No. 95-1 at 29-33.  Lastly, defendants contend that they are entitled to

14     qualified immunity because their conduct did not violate clearly established federal law.  ECF

15     No. 95-1 at 33-35.

16             By way of opposition, plaintiff asserts that he properly exhausted all of his claims

17     including by filing government claims.  With respect to the Heck bar, plaintiff counters that "[a]

18     finding that the defendants' applied unreasonable and excessive use of force would not tend to

19     invalidate plaintiff['s] RVR… resulting from the November 19, 2015 incident."  ECF No. 100 at

20     30.  According to plaintiff, the undisputed video evidence demonstrates that defendants Mim,

21     Abu, and Aungst were deliberately indifferent to his serious medical needs.  Lastly, plaintiff

22     submits that the defendants are not entitled to qualified immunity.  ECF No. 100 at 30-31.

23             In addition to responding to the arguments raised in defendants' summary judgment

24     motion, plaintiff makes a number of requests of the court buried throughout his 500 page

25     opposition.[2]  Plaintiff uses his opposition to request leave to amend his complaint to add an

26     additional ten claims based on violations of both federal and state law.  ECF No. 100 at 22.  A

27

28     [2] By separate order dated May 13, 2022, the court granted plaintiff's request for production of
       video evidence.  ECF No. 105.

1  great deal of plaintiff's opposition focuses on these claims which were not screened in and are not

2  before the court. <u>See</u> ECF No. 10 (screening order).[3]  However, a review of the docket indicates

3  that the court provided plaintiff with two opportunities to file an amended complaint in this case.

4  ECF Nos. 10, 67.  Plaintiff chose not to file an amended complaint when the court granted him

5  leave to do so.  Instead, plaintiff waited until after the dispositive motions deadline had passed to

6  request leave to amend.  Based on plaintiff's undue delay and his repeated failure to cure

7  deficiencies when granted leave to amend on two prior occasions, the court denies plaintiff's

8  motion to amend his complaint.  <u>See</u> <u>Sonoma County Ass'n of Retired Employees v. Sonoma</u>

9  <u>County</u>, 708 F.3d 1109, 1117 (9th Cir. 2013).

10      As part of his opposition, plaintiff also seeks to compel additional discovery from

11  defendants pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.  ECF No. 100 at 24.

12  However, plaintiff's request doesn't identify any other evidence other than the video tapes which

13  the court has already ordered produced.  <u>See</u> ECF No. 105.  Plaintiff's Rule 56(d) request merely

14  challenges defendants' objections or claims of privacy to his discovery requests.  ECF No. 100 at

15  26.  In this light, plaintiff's Rule 56(d) request is just an untimely motion to compel.  For all these

16  reasons, the court will deny plaintiff's request for additional discovery pursuant to Rule 56(d) of

17  the Federal Rules of Civil Procedure.

18      By way of reply, defendants point out that plaintiff's opposition does not include any

19  evidence that he properly exhausted his claims against defendants Mim, Abu, Aungst, or Luang

20  because filing a government claim is not included as part of the CDCR regulations governing

21  exhaustion.  ECF No. 103 at 7.  Additionally, "[s]ince [p]laintiff is taking the position that he did

22  not contact or batter Nieves at all, rather than contacting Nieves while acting in self-defense, the

23  case cited by [p]laintiff, <u>Simpson v. Thomas</u>, No. 2:03-cv-00591, 2009 WL1327147 (E.D. Cal.

24  May 12, 2009), is distinguishable" and the <u>Heck</u> bar still applies.  ECF No. 103 at 12.  The

25  documents that plaintiff submitted demonstrate that plaintiff's medical needs were addressed by

26

27

28

---

[3] It should be noted that the court gave plaintiff the option of proceeding on the claims found cognizable in the screening order or of amending his complaint to cure the deficiencies with respect to the remaining claims and defendants.  Plaintiff chose not to amend his complaint, but to stand on the claims found cognizable in the screening order.

1   defendants prior to his transfer to San Quentin and plaintiff's argument constitutes a difference of

2   opinion with his course of treatment which does not rise to the level of a deliberate indifference

3   claim.  ECF No. 103 at 13-17.  With respect to qualified immunity, plaintiff does not identify any

4   case law demonstrating that defendants' conduct violated constitutional standards under the

5   circumstances of this case.  ECF No. 103 at 17.

6       **II.       Legal Standards**

7       **A.  Summary Judgment Standards Under Rule 56**

8           Summary judgment is appropriate when it is demonstrated that there "is no genuine

9   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

10   Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by

11   "citing to particular parts of materials in the record, including depositions, documents,

12   electronically stored information, affidavits or declarations, stipulations (including those made for

13   purposes of the motion only), admissions, interrogatory answers, or other materials…."  Fed. R.

14   Civ. P. 56(c)(1)(A).

15           Summary judgment should be entered, after adequate time for discovery and upon motion,

16   against a party who fails to make a showing sufficient to establish the existence of an element

17   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

18   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an

19   essential element of the nonmoving party's case necessarily renders all other facts immaterial."

20   Id.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party

21   to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec.

22   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

23   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

24   of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

25   and/or admissible discovery material, in support of its contention that the dispute exists or shows

26   that the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed.

27   R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

28   fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**B.  Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, ... until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A prisoner must exhaust his administrative remedies before he commences suit.  McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th Cir. 2002).  Compliance with this requirement is not achieved by satisfying the exhaustion requirement during the course of a civil action.  See McKinney, 311 F.3d 1198

5

1   (9th Cir. 2002).  Failure to comply with the PLRA's exhaustion requirement is an affirmative

2   defense that must be raised and proved by the defendant.  Jones v. Bock, 549 U.S. 199, 216

3   (2007).  In the Ninth Circuit, a defendant may raise the issue of administrative exhaustion in

4   either (1) a motion to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is

5   clear on the face of the complaint, or (2) a motion for summary judgment.  Albino v. Baca, 747

6   F.3d 1162, 1169 (9th Cir. 2014) (en banc).  An untimely or otherwise procedurally defective

7   appeal will not satisfy the exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 84 (2006).

8         In order to defeat a properly supported motion for summary judgment based on a

9   prisoner's failure to exhaust pursuant to 42 U.S.C. § 1997e(a), plaintiff must "come forward with

10  some evidence showing" that he has either (1) properly exhausted his administrative remedies

11  before filing suit or (2) "there is something in his particular case that made the existing and

12  generally available remedies unavailable to him by 'showing that the local remedies were

13  ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  Williams v.

14  Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Hilao v. Estate of Marcos, 103 F.3d 767,

15  778 n.5) (9th Cir. 1996)); Jones, 549 U.S. at 218.  "Accordingly, an inmate is required to exhaust

16  those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the

17  action complained of.'"  Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (quoting Booth v. Churner,

18  532 U.S. 731, 738 (2001)).  If undisputed evidence viewed in the light most favorable to the

19  prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56 of

20  the Federal Rules of Civil Procedure.  Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  If

21  there is at least a genuine issue of material fact as to whether the administrative remedies were

22  properly exhausted, the motion for summary judgment must be denied.  See Fed. R. Civ P. 56(a).

23        When the district court concludes that the prisoner has not exhausted administrative

24  remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Wyatt v.

25  Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by

26  Albino, 747 F.3d at 1168-69.

27        **C.  Heck Bar**

28        In Heck v. Humphrey, 512 U.S. 477 (1994), the U.S. Supreme Court held that a convicted

6

criminal may not bring a civil suit questioning the validity of his conviction until he has had the

conviction set aside.  In <u>Smithart v. Towery</u>, 79 F.3d 951, 952-53 (9th Cir. 1996), the Ninth

Circuit held that where "a successful section 1983 action for excessive force would not

necessarily imply the invalidity of [plaintiff's] arrest or conviction, <u>Heck</u> does not preclude

[plaintiff's] excessive force claim."

### D.  Excessive Force

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual

punishment on inmates which has been defined as "the unnecessary and wanton infliction of

pain." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986).  "[W]henever prison officials stand accused

of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the

core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillan</u>, 503 U.S. 1, 7

(1992).  The court's inquiry into an excessive force claim focuses on the extent of the prisoner's

injury, the need for application of force, the relationship between that need and the amount of

force used, the threat reasonably perceived by the responsible officials, and any efforts made to

temper the severity of a forceful response.  <u>Hudson</u>, 503 U.S. at 7 (1992) (quotation marks and

citations omitted).  While the absence of a serious injury is relevant to the Eighth Amendment

inquiry, it does not end it.  <u>Hudson</u>, 503 U.S. at 7.  The malicious and sadistic use of force to

cause harm always violates contemporary standards of decency in violation of the Eighth

Amendment.  <u>Whitley</u>, 475 U.S. at 327.

### E.    Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct

violates 'clearly established statutory or constitutional rights of which a reasonable person would

have known.'" <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001) (quoting <u>Harlow v.</u>

<u>Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the court must

consider the following: (1) whether the alleged facts, taken in the light most favorable to the

plaintiff, demonstrate that defendant's conduct violated a constitutional right; and (2) whether the

right at issue was clearly established at the time of the incident.  <u>Saucier v. Katz</u>, 533 U.S. 194,

1    201 (2001).

2        **III.    Allegations in the Complaint[4]**

3        On November 19, 2015, plaintiff was a prisoner at the California Health Care Facility

4    ("CHCF") in Stockton.  Following a disciplinary hearing for a Rules Violation Report ("RVR") in

5    which plaintiff lost 30 days of privileges, plaintiff returned to the dayroom in Unit C2A.  ECF

6    No. 1 at 14.  While there, plaintiff began to complain to other inmates about his RVR hearing and

7    "how stupid" defendant Nieves was.  Id. at 16.  Defendant Nieves approached the dayroom area

8    to open the front door and ordered plaintiff to go outside to the yard because he had lost

9    privileges.  ECF No. 1 at 16.  Plaintiff responded that his loss of privileges had not started yet and

10   he requested to speak to defendant Nieves' supervisor.  Id. at 16-17.  According to plaintiff, that

11   angered defendant Nieves who used a racial slur when ordering plaintiff outside to the yard.  Id.

12   at 17.  Defendant Nieves pulled out his baton and threatened to crack plaintiff's skull while

13   swinging the baton at his side.  Id. at 18.  Plaintiff backed away from defendant Nieves "in fear

14   for his own safety and life…."  Id. at 18.  After plaintiff informed defendant Nieves that he was

15   on the unit's surveillance video, Nieves holstered his baton and requested staff assistance for a

16   disruptive inmate over his radio.  Id.  Five more correctional officers responded to the dayroom

17   including defendant Luang.  Using another racial slur, defendant Nieves ordered plaintiff to the

18   ground.  Id. at 20.  Plaintiff refused to comply, but stepped backwards in order to distance himself

19   from defendant Nieves.  Id. at 20-21.  Without warning, defendant Nieves unholstered his pepper

20   spray and sprayed plaintiff in the face causing "immediate blindness and respiratory problems…."

21   Id. at 21.  At that point, plaintiff was tackled to the ground and beaten with metal batons by

22   defendants Nieves and Luang until he lost consciousness.  Id.  He woke up on the dayroom floor

23   while bleeding from a head wound.  Id.

24       Plaintiff was taken to the sink in the dayroom area where he was medically evaluated by

25   defendants Aungst and Abu who refused to provide him with any medical treatment for his chest

26

27   [4] A plaintiff's verified complaint may be considered as an affidavit in opposition to summary
     judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence.
28   Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000).

1    pain and head injuries.  ECF No. 1 at 22.  Defendant Mim interfered with plaintiff's medical care

2    by instructing defendants Aungst and Abu not to provide him with any medical treatment for his

3    injuries.  Id.  Plaintiff was then placed in an isolation cell for several hours.  Defendants Aungst

4    and Abu refused to send plaintiff for an outside medical evaluation for a concussion nor did they

5    suture his head wound.  Id. at 23.  Plaintiff was transferred to San Quentin State Prison on the

6    same day without receiving any medical care or treatment for his injuries.  Id.

7            **IV.    Statement of Undisputed Facts[5]**

8            Correctional Officer Nieves was assigned as a floor officer in Facility C, Building 2A at

9    CHCF during the second watch shift from 6:00 a.m. until 2:00 p.m on November 19, 2015.

10   DSUF at No. 27.  Correctional Officer Luang was assigned as a floor officer for Facility C,

11   Building 4B on the same date and time.  DSUF at No. 28.  Lieutenant Mim was assigned as the

12   lieutenant for Facility C which included Building C2A at CHCF during the second watch as well

13   as the third watch shift from 2:00 p.m. until 10:00 p.m.  DSUF at No. 29.  Section C2A of CHCF

14   is a large and long building that houses inmates with medical needs.  DSUF at No. 32.

15   At approximately 0845 hours on November 19, 2015, defendant Nieves was conducting security

16   checks in the C2A housing unit.  DSUF at No. 33.  As he walked from the Officer's Podium

17   toward the front entrance of the housing unit to let a staff member in, he saw plaintiff standing in

18   the dayroom and staring at him.  DSUF at No. 33.  Defendant Nieves had been notified by

19   Sergeant Rowland that plaintiff had just been found guilty of a Rules Violation Report ("RVR")

20   and assessed a 30-day loss of dayroom privileges to take effect that same day.  Id.  However,

21   plaintiff disputes that his loss of privileges started on November 19, 2015.  ECF No. 95-4 at 11

22   (Deposition of Jamisi Calloway).  Defendant Nieves observed plaintiff speaking with a group of

23   other inmates in the dayroom.  DSUF at No. 35.  According to defendant Nieves, plaintiff was

24   noticeably angry based on his demeanor and body language.  ECF No. 95-12 at ¶ 6 (Declaration

25   _____

26   [5]  Although plaintiff disputed all facts other than his status as a CDCR prisoner at CHCF at the
     time of the events at issue, the court deems defendants' facts undisputed if plaintiff did not submit
     any evidence in opposition thereto.  It is the opposing party's obligation to produce a factual

27   predicate that supports a reasonable inference that can be drawn from the facts before the court on
     summary judgment.  See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D.

28   Cal. 1985), aff'd 810 F.2d 898, 902 (9th Cir. 1987).

of D. Nieves).  As Nieves walked past plaintiff to open the door and let the person in the unit, plaintiff began to speak more loudly and disrespectfully about Nieves to the other inmates in the dayroom.  DSUF at No. 36.  After opening the door, defendant Nieves walked back toward plaintiff and told him that he needed to pick up his belongings and either go out onto the yard or to go back to his cell because his dayroom privileges had been revoked.  DSUF at No. 38.  From this point on, the facts are disputed between the parties.

### A. Defendants' Version of Events

According to defendant Nieves, plaintiff refused to leave the dayroom when asked by responding "Fuck you!  I ain't going anywhere.  Make me!"  ECF No. 95-12 at ¶ 10.  Defendant Nieves informed plaintiff that he would be documenting his behavior.  ECF No. 95-12 at ¶ 11.  Plaintiff responded by walking up behind defendant Nieves, following him and yelling, "Make me go somewhere you bitch ass cop!"  ECF No. 95-12 at ¶ 12.  Nieves turned around and ordered plaintiff not to take any more steps towards him.  ECF No. 95-12 at ¶ 13.  According to Nieves, plaintiff just laughed and said, "Or what?"  Id. at ¶ 14.  Plaintiff then took two more steps toward defendant Nieves.  Id.  Fearing for his safety, defendant Nieves removed his baton from its holster.  Id. at ¶ 15.  Plaintiff then took two steps backwards.  Id.  Nieves re-holstered his baton, but heard plaintiff mumble something under his breath.  Id. at ¶ 16.  Based on plaintiff's response and his prior aggressive behavior in the housing unit during the prior six months, Nieves was worried for his personal safety so he used his radio to request additional staff to respond.  Id. at ¶ 17.  After Nieves called for back-up, plaintiff said, "Oh, you are going to call your boys," and he once again began to move toward Nieves.  Id. at ¶ 18.  Nieves still had his radio in his hand and announced to Central Control over the radio that "C2A's requesting a code 1 response - disruptive inmate in the dayroom."  Id. at ¶ 19.  Defendant Nieves then yelled loudly for all inmates in the dayroom to get down.  Id.  Plaintiff did not comply with Nieves' order and remained standing in the dayroom.  Id. at ¶ 20.

Defendant Luang arrived in building C2A in response to the alarm in order to provide assistance.  ECF No. 95-11 at ¶ 4 (Declaration of J. Luang).  Luang observed both plaintiff and defendant Nieves in the front of the dayroom near the door where he entered the housing unit.

1    ECF No. 95-11 at ¶ 6.  According to Luang, plaintiff said words to the effect of, "Fuck you, do

2    what you gotta do.  I ain't getting down," when Nieves ordered him to get down on the ground.

3    Id. at ¶ 5.  After that, Luang noticed plaintiff take a fighting stance, where one leg was behind

4    him preparing to fight with Officer Nieves.  Id. at ¶ 7.

5          Defendant Nieves then activated his personal alarm and took out his state-issued MK-9

6    O.C. pepper spray and ordered plaintiff to get down.  ECF No. 95-12 at ¶ 21.  Plaintiff just looked

7    at Nieves and then he took another step forward.  ECF No. 95-12 at ¶ 22.  In fear for his safety,

8    Nieves dispensed a one-second blast of pepper spray at plaintiff's face from approximately six to

9    eight feet away.  Id. at ¶ 23; ECF No. 95-11 at ¶ 8.  The pepper spray hit plaintiff in the face, but

10   plaintiff still did not get down on the ground.  Id.  Instead, plaintiff bent over at his waist and

11   began cursing and swearing.  Id. at ¶ 24.  Nieves yelled at him to "get down, get all the way down

12   and prone out," but plaintiff still refused to comply.  Id. at ¶ 25.  According to Luang, plaintiff

13   continued to advance toward Officer Nieves.  ECF No. 95-11 at ¶ 8.  At this point, plaintiff

14   lunged toward Nieves while swinging his arms and fists in the direction of Nieves' head and face.

15   Id. at ¶ 26.  Nieves deployed another one second burst of pepper spray at plaintiff's face.  Id. at ¶

16   27.  In order to avoid plaintiff's punches and arm swinging, Nieves stepped to the left, but

17   plaintiff was able to wrap his arms around Nieves' body and push him against the wall near the

18   entrance to the housing unit.  Id. at ¶ 28.  The two struggled with one another while standing up.

19   DSUF at No. 58.  Defendant Luang did not notice any blood on plaintiff's head during this

20   struggle.  ECF No. 95-11 at ¶ 9.

21         At some point during the struggle, defendant Luang pulled out his expandable baton and

22   struck plaintiff in the left buttock, where he had intended to strike him.  ECF No. 95-11 at ¶ 9.

23   Luang used his baton because he feared for Officer Nieves' safety as well as the safety and

24   security of other staff members.  Id.  The baton strike had no effect on plaintiff who continued to

25   advance on Officer Nieves.  Id.

26         During the same struggle, Nieves attempted to use his body weight and strength to free

27   himself from plaintiff's grasp, but he was unsuccessful.  ECF No. 95-12 at ¶ 29.  At that point, he

28   felt plaintiff bite him in the left arm pit through his coveralls and shirt.  Id.  Continuing to fear for

1    his safety, Nieves unholstered his baton and used one hammer strike to hit plaintiff.  Id.  Although

2    Nieves was aiming for plaintiff's shoulder area, he is not sure where his baton struck plaintiff.  Id.

3    Plaintiff continued to hold onto Nieves.  Id.

4        Other officers were able to free Nieves from plaintiff's grasp and to take plaintiff to the

5    ground.  DSUF at No. 61.  Defendant Luang observed plaintiff hit his head on a blue dayroom

6    chair as he fell, after which he noticed plaintiff was bleeding from his head.  ECF No. 95-11 at ¶

7    10.  While on the ground, plaintiff continued to be resistive by trying to push Officer Segura off

8    of him.  ECF No. 95-11 at ¶ 10.  Officers Luang and Segura were able to get plaintiff on his

9    stomach by flipping him over after which he was ordered to submit to handcuffs by Officer

10   Segura.  Id.  Ultimately, plaintiff was handcuffed with the assistance of a third officer, Vallery,

11   based on his continued resistance.  Id. at ¶ 11.

12       As a result of this incident, plaintiff received a small laceration to the top of his head and

13   was exposed to O.C. pepper spray.  DSUF at No. 76.  The laceration on the top of plaintiff's head

14   was actively bleeding, but it was not deep and was not sutured.  DSUF at No. 76.

15       **B. Plaintiff's Version of Events**

16       According to plaintiff, the entire event was precipitated by defendant Nieves' use of racial

17   slurs against him.  ECF No. 95-4 at 27:6-9, 13-18 (Plaintiff's Deposition).  Plaintiff denies taking

18   a fighting stance, lunging toward or attacking defendant Nieves.  ECF No. 100 at 76.  While

19   plaintiff admits that he could not see who hit him in the head with a baton due to the pepper

20   spray, he sustained his head injury while standing up before being taken to the ground.  Plaintiff's

21   Depo. at 104: 11-13, 105:2-4.  Plaintiff's injuries as a result of this incident included difficulty

22   breathing due to the pepper spray and chest pain.  ECF No. 100 at 187, 191 (Interdisciplinary

23   Progress Notes dated Nov. 19, 2015).

24       In addition to his own declaration, plaintiff submitted declarations from three other

25   inmates who are now deceased, but witnessed the events of November 19, 2015.[6]  See ECF No.

26

---

27   [6] Plaintiff submitted a fourth declaration from Inmate Robert Stringfellow who did not witness
     the November 19, 2015 incident, but did speak with defendant Nieves subsequently.  ECF No.
28   100-1 at 288.

1   100-1 at 255-259, 288.  All of these inmates indicated hearing defendant Nieves use a racial slur

2   against plaintiff, spraying him with pepper spray and then hitting him on the head with a baton.

3   Id.  Two of the inmates reported seeing plaintiff hit on the head with a baton multiple times by

4   defendant Nieves or a combination of Nieves and other officers.  See ECF No. 100-1 at 257, 259.

5   Plaintiff did not make any aggressive or provocative moves prior to being pepper sprayed.  Id.

6   Inmate Cromer reported seeing plaintiff throw up his hands "in [an] attempt to block the pepper

7   spray…."  ECF No. 100-1 at 256.

8          The video surveillance footage requested by plaintiff, and ordered produced by the court,

9   neither supports nor disproves plaintiff's version of events because the cameras are too far away

10  from the scene of the events.  See ECF No. 105 (order requiring production of additional video

11  surveillance footage); see also ECF No. 95-10 at 4 (Declaration of K. Mim) (indicating that "the

12  tapes did not provide a clear picture of what each staff member or Calloway did during the

13  incident as the videos were taken too far away.").  Therefore, the court gives the video

14  surveillance footage no weight in resolving the pending summary judgment motion.

15         **C.     Plaintiff's Rules Violation Report**

16         As a result of the November 19, 2015 incident, plaintiff received a Rules Violation Report

17  (Log Number CHCF-C-15-11-012) for Battery on a Peace Officer Causing Serious Bodily Injury

18  Resulting in the Use of Force in violation of Title 15 of the California Code of Regulations

19  § 3005(d)(1).  DSUF at No. 105.  Defendants contend that during the disciplinary hearing,

20  plaintiff admitted that he "went at [Nieves] to get [him]."  DSUF at No. 106.  Plaintiff denies ever

21  making this statement.  ECF No. 100 at 67.  Plaintiff was found guilty of this RVR based on the

22  reports from officer Luang, the Incident Package (Log No. CHCF-FACC-15-11-0525), photos,

23  officer Nieves' report, and the report by R.N. Hortizuela describing Nieves' injury as serious.

24  DSUF at No. 107.  Plaintiff challenges this evidence as being fabricated and false.  ECF No. 100

25  at 67.  As a result of this guilty finding, plaintiff lost 360 days of credits, 10 days of yard access,

26  and 90 days loss of phone privileges.  DSUF at No. 108.  This RVR has not been overturned.

27  DSUF at No. 109.

28  /////

## V.   Exhaustion of Administrative Remedies

### A.  CDCR Non-Medical Appeals Procedure

Between November 19, 2015 and August 27, 2019,[7] the California Department of Corrections and Rehabilitation used an inmate grievance procedure with three levels of review that allowed for prisoners to appeal any departmental decision, action, policy, omission, or condition that had an adverse material effect on the inmate's health, safety, or welfare. Defendants' Statement of Undisputed Facts ("DSUF") at Nos. 5, 8; see also Cal. Code Regs. tit. 15, § 3084.1(a) (2015) (repealed June 1, 2020).[8]   A prisoner initiates an inmate appeal by submitting a CDCR 602 Form.  DSUF at No. 7.  Inmates must follow the procedures outlined in California Code of Regulations, Title 15, sections 3084 through 3085, by describing the problem and the action requested in the appeal form.  DSUF at Nos. 6, 8.  The level of specificity required in the appeal is described by regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue.  To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.  The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3)–(4) (repealed June 1, 2020); DSUF at No. 10.  According to CDCR regulations, inmates are only permitted to grieve one issue per appeal.  DSUF at No. 12, Cal. Code Regs. tit. 15, § 3084.6(b)(8).

At the first level of administrative review, the CDCR 602 form is submitted to the appeals coordinator at the prison.  DSUF at No. 9, Cal. Code Regs. tit. 15, § 3084.7.  The appeals coordinator may bypass the first level of review under certain circumstances.  Id.  If the inmate is

---

[7] The filing date of the complaint was calculated using the prison mailbox rule.  See Houston v. Lack, 487 U.S. 266 (1988).

[8] All additional statutory references are from 2015 unless noted otherwise.

1   not satisfied with the decision at the first level, he may appeal to the second level.  Id.  The

2   second level of administrative review must be completed before appealing to the Appeals Chief

3   who conducts the third level of review.  Id.  The Office of Appeals ("OOA") is responsible for

4   receiving, reviewing, and maintaining all non-medical inmate grievances at the third level of

5   administrative review.  DSUF at No. 14.  To properly exhaust an administrative grievance, an

6   inmate must pursue his appeals through all three levels of review unless excused from one of the

7   levels in accordance with Title 15.  Id.

8        When an inmate submits an appeal that does not comply with the regulations governing

9   the appeal process, a grievance coordinator will reject and then return the appeal with the reason

10  for the rejections and provide instructions on how to correct the defect, if possible.  DSUF at No.

11  11, Cal. Code Regs. tit. 15, §§ 3084.6(b) (2018).  An appeal that is cancelled cannot be

12  resubmitted, but an inmate may appeal the cancellation if he or she feels the cancellation is in

13  error.  Id.  An appeal may be rejected or cancelled for the reasons outlined in California Code of

14  Regulations, Title 15, sections 3084.6(b) and (c), including expiration of time limits, allegations

15  that lack factual evidence and specific detail, and exceeding the allowable number of appeals filed

16  in a 14 calendar day period.  Id.  If an appeal is rejected or cancelled at any level, it is not

17  properly exhausted.  Id.

18       If plaintiff submitted an appeal to another prison regarding an event that occurred at

19  CHCF, the other prison would forward the appeal to CHCF for review and the appeal would be

20  logged on the CHCF electronic database used for tracking inmate grievances.  DSUF at 15.  This

21  database known as "IATS" includes the inmate's name and CDCR number, the category of each

22  grievance, the appeal log number assigned to each grievance, the dates the grievance is received

23  and completed, and the disposition at the first and second levels of institutional review.

24  Declaration of S. DeJesus at No. 4.

25       Plaintiff submitted multiple appeals to the CHCF appeals coordinator between November

26  19, 2015, when the incidents in plaintiff's complaint occurred, and August 27, 2019, when

27  plaintiff filed suit.  DSUF at No. 16.

28  /////

15

### B.  CDCR Medical Appeals Procedure

Since August 1, 2008, all health care appeals/grievances concerning inmate medical, dental, and mental health care issues have been processed by California Correctional Health Care Services ("CCHCS").  ECF No. 96 at Nos. 1-3 (Declaration of R. Hart).  Prior to September 1, 2017, health care appeals were subject to three levels of review before administrative remedies were deemed exhausted.  Cal. Code. Regs. tit. 15 §§ 3084-3086; DSUF at No. 20.

### C.  Relevant Administrative Appeals

#### 1.  Appeal Log No. CHCF-15-03339

On December 1, 2015, plaintiff submitted a 602 grievance form asserting that officer Nieves discriminated against him by using racial slurs, pepper sprayed him, and then struck him in the head causing injuries.  ECF No. 95-7 at 19-22 (CDCR 602 form); DSUF at No. 18.  In this appeal, plaintiff also complained that officers Nieves, Luang, Vallery, Mim, and Rowland fabricated state documents concerning this use of force.  Id.  Plaintiff did not include any allegations that officer Luang used excessive force against him.  Id.  Nor did this complaint mention any conduct by staff members Abu and Aungst.  Id.

Plaintiff's grievance was assigned Appeal Log Number CHCF-15-03339.  DSUF at No. 18.  The first level of administrative review was bypassed and it was accepted for review at the second level.  Id.  On December 29, 2015, CHCF partially granted plaintiff's appeal at the second level after completing witness interviews and reviews of the incident reports and video surveillance footage.  Id.  CHCF determined that staff did not violate CDCR policy pertaining to the issues appealed.  Id.

Plaintiff submitted this appeal to the third level of review on February 2, 2016.  DSUF at No. 19.  The OOA denied the appeal on April 12, 2016.  DSUF at No. 19.

#### 2.  Health Care Appeal Log No. SQ-HC-16040669

Plaintiff submitted multiple medical appeals between November 19, 2015 through August 27, 2019, when plaintiff filed his lawsuit.  DSUF at No. 22.  Upon review of plaintiff's medical appeals, Health Care Appeal Log No. SQ-HC-16040669 relates to plaintiff's deliberate indifference claims.  DSUF at No. 23.

16

Plaintiff submitted a 602 health care appeal form on December 29, 2015 alleging that on November 19, 2015, health care staff members Abu, Aungst, and Moore witnessed acts of racial discrimination and excessive force committed against plaintiff, but failed to report this on any crime/incident report or staff reporting form.  ECF No. 96 at 58-60 (CDCR 602 HC form); DSUF at No. 24.  Plaintiff also alleged that R.N. Aungst failed to document his injuries received from unidentified custody staff who hit him over the head several times with their batons causing him severe head trauma.  Id.  In this appeal plaintiff requested that the identified medical personnel submit clarification reports "of their involvement of the incident and what they witnessed" and further documenting what medical treatment plaintiff received prior to his transfer to San Quentin.  Id.

This health care appeal was accepted at the first level of administrative review.  DSUF at No. 24; ECF No. 96 at 62 (Institution Response for First Level Health Care Appeal).  The two issues in the appeal were noted to be a request for medical records from November 19, 2015 and a request for clarification reports from medical staff regarding the incident on the same date.  Id.  Plaintiff was interviewed in order to fully explain his appeal, but he did not provide any additional issues.  Id.  The appeal was partially granted on February 24, 2017 by informing plaintiff that he could request an Olsen review of his medical records.  Id.  To the extent that plaintiff requested clarification reports to be provided, the appeal was denied.  Id.

Plaintiff submitted health care appeal Log No. SQ-HC-16040669 to the second level of administrative review on March 15, 2017.  DSUF at No. 25.  He indicated that he was dissatisfied with the first level decision due to the delay in response time.  ECF No. 96 at 59.  On April 4, 2017, plaintiff's appeal was again partially granted at the second level of review by informing him that he could request an Olsen review of his medical records.  DSUF at No. 25.  Plaintiff's request for clarification reports was again denied.  Id.  Plaintiff was further informed that if he felt the reports related to the November 19, 2015 incident were missing and further investigation was needed, he would need to go through the proper steps with custody by completing a Form 22.  Id.

On April 9, 2017, plaintiff submitted this health care grievance to the third level of administrative review.  DSUF at No. 26; ECF No. 96 at 59.  The appeal was denied on July 7,

17

2017 noting that plaintiff "failed to state facts, specify an act, or provide documentation consistent" with his allegations that medical staff failed to document his injuries and what they witnessed.  DSUF at No. 26; ECF No. 96 at 56-57.

### D.  Plaintiff's Evidence of Exhaustion

Plaintiff submits that Appeal Log Nos. CHCF-SC-15000469, CHCF-C-15-03124, and Governmental Claim G631454 are also relevant in demonstrating that he properly exhausted his administrative remedies prior to filing suit.  ECF No. 100 at 36, 92.

#### 1.  Appeal Log No. SC-15000469

On October 21, 2015, plaintiff submitted a 602 grievance concerning the failure to protect him from sexual harassment of staff, retaliatory reprisals, and abuse of authority.  ECF No. 100 at 102-105.  None of the defendants in the present action were mentioned in this 602.  Id.  This appeal was reviewed by the third level of administrative review and properly exhausted.  See ECF No. 100 at 115-116.

#### 2.  Appeal Log No. CHCF-C-15-03124

On November 12, 2015, plaintiff filed a 602 grievance against officer Nieves for "sexual retaliation, abuse of authority, and unauthorized stolen property from his cell" based on a search conducted on October 27, 2015.  ECF No. 100 at 135.  This appeal was reviewed by the third level of administrative review and properly exhausted.  See ECF No. 100 at 170-171.

## VI.    Analysis

### A.  Exhaustion

The court finds that defendants have carried their initial burden of proving the availability of an administrative remedy.  Therefore, the burden shifts to plaintiff to come forward with evidence that there was something in his particular case that made the existing administrative remedies effectively unavailable to him or that he has otherwise properly exhausted his claims.  Williams v. Paramo, 775 F.3d at 1191.  In this case, plaintiff disputes that the administrative appeals cited by defendants are the only relevant ones for exhaustion purposes.  However, after reviewing the additional evidence submitted by plaintiff in opposition to summary judgment, the court finds that Appeal Log No. CHCF-15-03339 and Health Care Appeal Log No. SQ-HC-

18

1    16040669 are the only relevant appeals regarding the excessive force and deliberate indifference

2    claims presented in plaintiff's complaint.[9]  The additional administrative appeals relied upon by

3    plaintiff either do not concern any of the named defendants or do not involve the same subject

4    matter as the excessive force and deliberate indifference claims in this suit.

5            Turning first to defendant Luang's argument that plaintiff did not properly exhaust his

6    administrative remedies concerning the excessive force claim against him, the court finds that the

7    subject matter of Appeal Log No. CHCF-15-03339 was the fabrication of state documents by

8    defendant Luang.  This grievance did not include any allegations that officer Luang used

9    excessive force against plaintiff on November 19, 2015.  Nor did any additional administrative

10   appeals submitted in evidence by plaintiff concern defendant Luang's use of excessive force.

11   Accordingly, the undersigned concludes that the undisputed material evidence demonstrates that

12   plaintiff did not properly exhaust his excessive force claim against defendant Luang.

13           With respect to defendants Aungst, and Abu, the issue before the court is whether Health

14   Care Appeal No. SQ-HC-16040669 properly exhausted plaintiff's deliberate indifference claims

15   against them.  This appeal did not describe what specific actions these medical defendants did

16   that constituted deliberate indifference to plaintiff's medical needs.  The subject matter of

17   plaintiff's grievance was these defendants' failure to complete incident and staff reports about the

18   events of November 19, 2015.  However, that is not the same deliberate indifference claim

19   presented in the instant lawsuit.   In the complaint, plaintiff alleges that defendants Aungst and

20   Abu failed to treat his chest pain and head injures with sutures.  He also specifically challenges

21   their failure to send him for an outside medical evaluation for a possible concussion.  Therefore,

22   the undersigned finds that Health Care Appeal No. SQ-HC-16040669 did not properly exhaust

23   plaintiff's administrative remedies with respect to his deliberate indifference claims against

24   _____

25   [9] The court finds it unnecessary to address plaintiff's argument that he properly exhausted his
     administrative remedies by filing a government claim form since the applicable prison grievance
26   regulations do not include this as part of the administrative exhaustion process.  See Cochran v.
     Aguirre, No. 1:15-cv-01092-AWI-SAB (PC), 2017 WL 3149585, *14 (E.D. Cal. 2017); Taylor v.
27   Henderson, No. CV11-0351-RGK (DTB), 2012 WL 6838947, at *6, n. 7 (C.D. Cal. Aug. 28,
     2012), adopted by No. CV11-0351-RGK DTB, 2013 WL 139203 (C.D. Cal. Jan. 9, 2013).  Filing
28   a government claim is only required to bring a state law claim against a state official.

1  defendants Aungst, and Abu.  See Woodford v. Ngo, 548 U.S. 81, 90 (2006) (emphasizing that

2  proper exhaustion of a claim requires a prisoner to comply with all of the prison's procedural

3  rules in order to allow the agency to address the complaint on the merits); see also Cal. Code

4  Regs. tit. 15 Section 3084.2(a)(3) (requiring an inmate to "list all staff member(s) involved and

5  shall describe their involvement in the issue" being grieved).  Because Health Care Appeal Log

6  No. SQ-HC-16040669 did not identify defendant Mim at all, the undisputed material facts

7  demonstrate that plaintiff did not exhaust his deliberate indifference claim against this defendant

8  either.  For all these reasons, the undersigned recommends granting the motion for summary

9  judgment for failing to exhaust administrative remedies as to defendants Luang, Aungst, Abu, and

10  Mim.

11          **B.  Heck Bar**

12          In prisoner cases, courts have since recognized that "it is possible for an excessive force

13  action and a battery conviction to coexist without running afoul of Heck[.]"  Calloway v. Oaks,

14  No. 1:08-cv-01896 LJO GSA PC, 2013 WL 4586442, at *3 (E.D. Cal. Aug. 28, 2013) (involving

15  this same plaintiff for an incident that occurred at Corcoran State Prison).  In Simpson v. Thomas,

16  No. 2:03-cv-00591 MCE GGH, 2009 WL 1327147 (E.D. Cal. May 12, 2009), the district court

17  denied summary judgment to defendant on the ground that plaintiff's excessive force claim was

18  barred by his battery conviction arising out of the same incident.  It noted that "[e]ven if

19  [d]efendant acted unlawfully by using excessive force, [p]laintiff could still have been guilty of

20  battery if [p]laintiff also used excessive force."  Simpson, 2009 WL 1327147 at *4.  The issue

21  before the court in this case is the degree of force used by defendant Nieves and whether that

22  amount of force was justified.  That is analytically distinct from whether plaintiff's actions

23  amounted to battery causing serious bodily injury.  Accordingly, a verdict in favor of plaintiff on

24  the excessive force claim does not necessarily invalidate his disciplinary conviction.  The

25  undersigned recommends denying defendants' motion on the basis of a Heck bar.

26  /////

27  /////

28  /////

1

**C.  Excessive Force[10]**

2

**1.  Use of Pepper Spray**

3        The court turns first to the initial application of force by defendant Nieves based on the

4 use of pepper spray against plaintiff.  Construing the evidence in the light most favorable to

5 plaintiff, the undersigned finds no genuine dispute as to whether defendant Nieves' use of pepper

6 spray "was applied in a good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 6

7 (citing Whitley, 475 U.S. at 320-21).  Applying the five Hudson factors, defendant Nieves' use of

8 pepper spray does not rise to the level of an Eighth Amendment violation based on the undisputed

9 material facts in this case.  First, plaintiff's injuries from the pepper spray were not serious, even

10 accepting plaintiff's complaints of chest pain and difficulty breathing as true.  When plaintiff

11 failed to comply with defendant Nieves' repeated orders to exit the dayroom, this created the need

12 for the application of force.  Although plaintiff seeks to excuse his lack of compliance with

13 defendant Nieves' orders to leave the dayroom and to get down on the floor, he does not dispute

14 that he remained standing in the dayroom. See Glass v. Scribner, No. 1:04-cv-05953-AWI-DLB-

15 PC, 2009 WL 2579657, at *5 (E.D. Cal. Aug. 19, 2009) (finding that even if inmate placed a

16 mattress in front of his body to protect himself, his refusal to comply with staff orders justified

17 the use of force because "[i]nsubordination is a matter taken very seriously within the confines of

18 an institutional setting.").  In determining whether the amount of pepper spray used was excessive

19 in light of the need for the use of force, the Ninth Circuit considers the quantity of pepper spray

20 actually discharged. See Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013) (applying legal

21 principles developed in relationship to the use of tear gas to the use of pepper spray).  In order to

22 gain his compliance, defendant Nieves applied two one-second bursts of pepper spray.  The

23 undisputed material facts do not demonstrate that the amount of pepper spray discharged was

24 disproportionate to the need to gain compliance with a direct order. Spain v. Procunier, 600 F.2d

25 189 (9th Cir. 1979) (concluding that the use of nondangerous quantities of tear gas to prevent a

26

---

27 [10] As the undersigned recommends granting defendant Luang's motion for summary judgment based on exhaustion, for reasons of judicial economy, the court finds it unnecessary to address the
28 excessive force claim against him.

1   perceived future danger does not violate "evolving standards of decency" or constitute an

2   "unnecessary and wanton infliction of pain.").  Turning to whether plaintiff's conduct constituted

3   a threat, although the affidavits from other prisoners submitted in opposition to summary

4   judgment indicate that plaintiff did not make any aggressive moves prior to being pepper sprayed,

5   none of them indicate that plaintiff was complying with Nieves' orders.  See ECF No. 100-1 at

6   257, 259.  Therefore, they do not create a genuine issue of material dispute.  Defendant Nieves

7   reasonably perceived the situation as volatile and threatening based on his six month history of

8   working with plaintiff in that unit.  Plaintiff fails to show that there is a material issue of fact that

9   the use of pepper spray was used by defendant Nieves "maliciously and sadistically for the very

10  purpose of causing harm" in light of the other relevant Hudson factors.  See Hudson, 503 U.S. at

11  6.  Because it was limited to one second blasts on two separate occasions, the undisputed material

12  facts do not indicate that defendant Nieves used his pepper spray for the specific purpose of

13  causing plaintiff harm.  In order for an Eighth Amendment excessive force case to survive

14  summary judgment, the evidence must go "beyond a mere dispute over the reasonableness of a

15  particular use of force or the existence of arguably superior alternatives" to support "a reliable

16  inference of wantonness in the infliction of pain."  Whitley, 475 U.S. at 322.  This is not such a

17  case.

18      Even if some dispute existed as to whether the use of pepper spray was excessive, the

19  doctrine of qualified immunity would bar liability, as defendant Nieves did not violate a "clearly

20  established" federal right.  Here, plaintiff has not established an Eighth Amendment violation

21  from the use of pepper spray or that a reasonable official would have known that the use of

22  pepper spray violated a clearly established statutory or constitutional right.  See Harlow v.

23  Fitzgerald, 457 U.S. 800, 818 (1982).  A reasonable officer would not have believed that two

24  bursts of pepper spray for one second each time to gain compliance with a direct order constituted

25  the use of excessive force in violation of the Eighth Amendment.  See Saucier v. Katz, 533 U.S.

26  194, 205 (2001) (citation omitted) (explaining that the reasonableness of officer's belief as to

27  appropriate level of force should be judged from an on-scene perspective); Marquez v. Gutierrez,

28  322 F.3d 689, 691 (9th Cir. 2003).  For all these reasons, the undersigned recommends granting

1    defendant Nieves' motion for summary judgment on the use of pepper spray against plaintiff.

2    **2. Baton Strike**

3    Plaintiff also argues that defendant Nieves' use of his baton to strike plaintiff in the head

4    constituted excessive force in violation of the Eighth Amendment. Accepting plaintiff's

5    allegations as true, the issue is whether the use of a metal baton to strike plaintiff in the head was

6    done maliciously and sadistically for the very purpose of causing harm. Turning to the five

7    Hudson factors, the court first reviews the extent of plaintiff's injuries in order to resolve the

8    excessive force claim. The extent of plaintiff's injury due to the baton strike is disputed. While

9    defendant submits evidence that plaintiff's head laceration did not even need suturing and that it

10   may have occurred from hitting a chair on the way to the ground, plaintiff indicated that he lost

11   consciousness after being struck in the head by a baton and woke up in his own blood. Thus, the

12   extent of plaintiff's injury from the baton strike is in genuine dispute. Based on the conflicting

13   declarations presented by both sides, and in the absence of any objective video evidence of the

14   incident, plaintiff has established a genuine issue of material fact sufficient to rebut defendant

15   Nieves' motion for summary judgment with respect to the remaining Hudson factors as well.

16   Viewed in the light most favorable to the plaintiff, a rational juror could view the baton strike to

17   plaintiff's head by defendant Nieves as excessive considering the presence of three additional

18   correctional officers at the time the force was used. "Because [the excessive force inquiry] nearly

19   always requires a jury to sift through disputed factual contentions, and to draw inferences

20   therefrom, we have held on many occasions that summary judgment or judgment as a matter of

21   law in excessive force cases should be granted sparingly." Santos v. Gates, 287 F.3d 846, 853

22   (9th Cir. 2002); see also Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997)

23   ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact

24   for the jury."). For all these reasons, the undersigned recommends denying defendant Nieves'

25   motion for summary judgment on the Eighth Amendment claim of excessive force for the use of a

26   metal baton to strike plaintiff.

27   The court has already established that, taken in the light most favorable to plaintiff, the

28   allegations demonstrate a disputed issue of material fact concerning the violation of plaintiff's

Eighth Amendment rights by defendant Nieves by using his metal baton.  Thus, plaintiff has met

the first prong of the qualified immunity analysis by establishing a constitutional violation.  As

for the second prong, the law at the time was clear that force used sadistically and maliciously for

the very purpose of causing harm violated the Eighth Amendment.  Whitley, 475 U.S. at 320-21.

Here, the court cannot resolve the parties' dispute as to whether defendant Nieves violated clearly

established statutory or constitutional rights of which a reasonable person would have known

based on when the baton strike occurred and which area of plaintiff's body was struck with the

baton.  This is because both parties' arguments depend on credibility assessments that are left for

the jury to decide.  Defendant Nieves contends that he was aiming for plaintiff's shoulder when

using his baton.  However, plaintiff, as well as additional prisoner witnesses, indicated that

plaintiff received blows only to the head.  "Unreasonable force claims are generally questions of

fact for a jury" and, as a result, qualified immunity is not properly granted on such claims.

Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995).  Accordingly, the court concludes there is a

genuine material dispute as to the second question in the qualified immunity analysis.

Accordingly, defendant Nieves is not entitled to summary judgment based on qualified immunity.

See Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) ("[S]ummary judgment based on

qualified immunity is improper if, under the plaintiff's version of the facts, and in light of the

clearly established law, a reasonable officer could not have believed his conduct was lawful.")

(citing Grossman v. City of Portland, 33 F.3d 1200, 1208 (9th Cir. 1994)).

   In sum, the court finds there is a genuine dispute of material fact as to whether defendant

Nieves' use of force in striking plaintiff with a metal baton violated plaintiff's Eighth Amendment

rights and whether this conduct violated clearly established statutory or constitutional rights of

which a reasonable person would have known.  Accordingly, the undersigned recommends

denying defendant Nieves' motion for summary judgment as to this portion of the excessive force

claim.

   Accordingly, IT IS HEREBY ORDERED that:

   1.  Defendant's request to exceed the page limit (ECF No. 94) is granted.

   2.  Plaintiff's motion to amend his complaint contained within his opposition to summary

1    judgment (ECF No. 100) is denied.

2    3.   Plaintiff's request for additional discovery pursuant to Rule 56(d) of the Federal Rules

3         of Civil Procedure (ECF No. 100) is also denied.

4    IT IS FURTHER RECOMMENDED that:

5    1.   Defendants' motion for summary judgment (ECF No. 95) be granted in part and

6         denied in part.

7    2.   Specifically, the court recommends that the motion for summary judgment be granted

8         as to defendants Luang, Mim, Aungst, and Abu based on plaintiff's failure to exhaust

9         his administrative remedies.

10   3.   The claims against defendants Luang, Mim, Aungst, and Abu be dismissed without

11        prejudice.

12   4.   The court recommends that defendant Nieves' motion for summary judgment be

13        granted with respect to the use of pepper spray, but denied with respect to the use of a

14        metal baton.

15       These findings and recommendations are submitted to the United States District Judge

16   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

17   after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties.  Such a document should be captioned

19   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

20   objections shall be served and filed within fourteen days after service of the objections.  The

21   parties are advised that failure to file objections within the specified time may waive the right to

22   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23   Dated:  June 17, 2022

24                                         _____
                                          CAROLYN K. DELANEY
25                                        UNITED STATES MAGISTRATE JUDGE

26

27

28   12/call1792.msj.docx

                                          25